UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-110-GWU

LINDA ROMER, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

>   Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.
>
> 4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).
>
> 5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).
>
> 7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. Section 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid.

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Linda Romer, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of mild degenerative changes of the lumbar spine, bilateral carpal tunnel syndrome, and blindness in the left eye. (Tr. 20). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Romer retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 23-6). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 46, ninth grade education, and semi-skilled work experience could perform any jobs if she were limited to "light" level exertion, and also had the following non-exertional limitations. She: (1) could occasionally climb, stoop, bend, crawl, and kneel; (2) had a limited ability to perform overhead reaching and "limited"

gross manipulation requirements in terms of handling; (3) had limited far acuity and limited depth perception because of blindness in the left eye; and (4) would be restricted to "so-called low stress work that involves only simple, routine, non-detailed tasks, where co-worker and public contact was casual and infrequent, where supervision was direct and non-confrontational, and where changes in the workplace were infrequent and gradually introduced." (Tr. 307-8). The VE responded that such a person could perform the duties of production inspector, grader/sorter, and production machine tender with a total of 1,800 jobs in Kentucky and 174,000 nationally. (Tr. 308).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff stated that she had stopped her last job in maintenance because of back pain and bilateral wrist pain. (Tr. 301-2). She also described problems with nerves and depression, including panic attacks, stated that she had been blind in her left eye since she was approximately eight years old and could not afford glasses for her other eye, and had difficulty sleeping because of sleep apnea. (Tr. 304-6).

The ALJ stated that he accepted the report and limitations of Dr. Peter Gurk (Tr. 22), a consultative physical examiner. Dr. Gurk's examination showed, among other items, very poor vision in the left eye, and tenderness to palpation in the

07-110 Romer

lumbosacral spine and bilateral sacroiliac joints, with a mild degree of spasm. (Tr. 179). Range of motion was limited in the plaintiff's back, wrists, and right shoulder, which was limited in flexion, abduction, and adduction. (Tr. 179-80). Phalen's test[1] was positive in both upper extremities. (Tr. 179). Dr. Gurk diagnosed degenerative joint disease involving the lower back, bilateral sacroiliitis, blindness of the left eye, carpal tunnel syndrome, and major depression. He felt that the plaintiff would "have difficulty with activities involving bending, climbing, stooping, kneeling, crawling, and over-the-shoulder work." (Tr. 180-1).

A state agency reviewer, Dr. John Rawlings, reviewed the evidence, including treatment notes from the plaintiff's family doctors, and opined that the plaintiff could perform "light" level exertion with occasional climbing of ladders, ropes, and scaffolds, stooping, and crawling, that she would be limited to occasionally reaching in all directions, including overhead, with the right upper extremity, and would have a limited ability to perform handling/gross manipulation, as well as having limited far acuity and depth perception. (Tr. 201-3). He appeared to base his opinion largely on Dr. Gurk's examination and report, although erroneously noting a normal range of motion of the wrists. (Tr. 202).

---

[1]A positive Phalen's test is pain and numbness produced by palmar flexion and is used to diagnose carpal tunnel syndrome. 10, Ausman & Snyder's Medical Library–Lawyers Edition, Section 28:12, 1992.

9

As previously noted, the ALJ appeared to state that he was accepting Dr. Gurk's limitations, although he actually provided restrictions that were consistent with Dr. Rawlings. (Tr. 22).² The ALJ also erroneously stated that state agency medical experts had limited the plaintiff to medium work activity, which opinion he rejected (Tr. 23), although Dr. Rawlings had actually limited the plaintiff to "light" exertion and the other "medical expert" was apparently not an acceptable medical source under the Commissioner's regulations at 20 C.F.R. Section 404.1513. (Tr. 192-9).

The plaintiff points out on appeal that the hypothetical question contained only a restriction on overhead reaching, a lesser impairment than the limitation on all "over-the-shoulder work" mentioned by Dr. Gurk, as well as a less extensive restriction than the occasional reaching overhead in all directions "including overhead" found by Dr. Rawlings. Social Security Ruling (SSR) 85-15 states that reaching, defined as "extending the hands and arms in any direction" is an activity required in almost all jobs and a significant limitation may eliminate a large number of occupations a person could otherwise do. Since varying degrees of limitations would have different effects, it advises the assistance of a vocational expert to

---

²For instance, the ALJ placed a limitation on the plaintiff's ability to perform gross manipulation, which was not mentioned by Dr. Gurk, although it was certainly consistent with his finding of bilateral carpal tunnel syndrome and limited range of motion of the wrists.

determine the effects of the limitations. SSR 85-15, p. 7. In the present case, given the low job numbers provided by the vocational expert, and the importance attached to the issue by SSR 85-15, the court agrees with the plaintiff that the hypothetical question was not adequate.

Although a remand will be required on this ground, the plaintiff also argues that the ALJ inadequately considered her mental impairments.

There are several mentions of depression and anxiety in the office notes of the plaintiff's family practitioner (Tr. 115, 125, 172, 249), but, although medications were provided, no functional restrictions are given.

The plaintiff was consultatively examined by Dr. Kenneth Starkey, a psychologist, who noted a somewhat dysphoric mood and diagnosed a depressive disorder, a pain disorder with both general medical and psychological conditions, and nicotine dependence. (Tr. 185, 189). He assigned a Global Assessment of Functioning (GAF) score of 60, which equates to moderate symptoms or moderate difficulty in social, occupational, or school functioning. <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision), p. 34. Dr. Starkey made a number of conclusions about the plaintiff's ability to work which are difficult to reconcile. He noted that, taken jointly, her prevailing symptoms created mild to moderate personal distress and impairment of social and occupational functioning from a psychological perspective. (Tr. 190). He felt that she would be able to

07-110  Romer

understand and remember simple, one or two step instructions without significant difficulty, but was likely to respond by becoming somewhat depressed and anxious under the pressures found in most day-to-day work settings, and was also likely to have mild to moderate difficulty sustaining the attention and pace necessary for completing tasks common to most everyday work settings.  (Tr. 188).  He felt that with three to six months of formal psychiatric and psychological care, including weekly psychotherapy, the plaintiff could experience improvement in her prevailing symptoms and be rendered psychologically appropriate for training or placement.  (Tr. 189).  This statement implies that the plaintiff was not currently able to undergo vocational training, much less work.

State agency psychologists who reviewed the record essentially ignored this section of Dr. Starkey's report.  Dr. Ann Demaree prepared a mental residual functional capacity assessment form stating that the plaintiff would be "moderately limited" in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and in her ability to respond appropriately to changes in the work setting.  She added that she felt the plaintiff was capable of understanding and completing tasks and relating adequately.  (Tr. 211).  Dr. Jane F. Brake, while

07-110 Romer

stating that she affirmed Dr. Demaree's initial decision, prepared a mental RFCA omitting the moderate limitations on completing a normal workday and workweek and performing at a consistent pace. (Tr. 212-14).

As relatively minor as the restrictions given by the state agency reviewers are, the ALJ apparently gave them no consideration, thus failing to perform his duty of considering this evidence under 20 C.F.R. Section 404.1527(f)(2). The ALJ's treatment of the different factors listed by Dr. Starkey was boiled down to the simple statement that the claimant retained the ability to complete tasks and relate adequately in a work setting. (Tr. 23). While the court does not suggest that the current evidence establishes disability from a mental perspective, the evaluation of the evidence and the ALJ's thought processes in reaching his conclusions regarding mental restrictions are clearly inadequate.

The decision will be remanded for further consideration.

This the 8th day of February, 2008.



Signed By:
G. Wix Unthank
United States Senior Judge